UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

May 22, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: Butler et al. v. PP&G, Inc., et al. Report and Recommendation
Civil No. 20-3084-JRR

Dear Counsel:

This case was referred to me for a Report and Recommendation addressing damages following Judge Rubin's entry of default judgment in favor of Plaintiffs. *See* ECF 57. For the reasons noted below, I recommend a damages award of $1,134,364.22 and further instruct counsel for Plaintiffs to submit a request for attorney's fees that complies with Local Rule 109.2 within fourteen days of Judge Rubin's adoption of this Report and Recommendation, should she adopt it.

### I.  **Factual and Procedural History**

Though I am only tasked with determining damages, some recitation of the procedural facts of this case are in order. Plaintiffs (Marquita Butler, Nicole Leach, Shante Jackson, Dorothy Ray, and Shantelle Niang) brought this suit under the Fair Labor Standards Act ("FLSA"), the Maryland Wage Payment and Collection Act ("MWPCL"), and the Maryland Wage and Hour Law ("MWHL") against Defendants PP&G, Inc., d/b/a Norma Jean's Nite Club, Garrett Million, Peter Ireland, and Lisa Ireland ("Norma Jean's" or "Defendants"). *See* Second Amended Complaint, ECF 29. Plaintiffs are exotic dancers who worked at Norma Jean's during the relevant time period between October 23, 2017,[1] through the present. ECF 66-1 ¶ 2; ECF 66-2 ¶¶ 2–3; ECF 66-3 ¶¶ 2–3; ECF 66-4 ¶¶ 2–3; ECF 66-5 ¶¶ 2–3. Plaintiffs allege that Norma Jean's improperly classified Plaintiffs Butler, Ray, and Niang as independent contractors rather than employees under the FLSA and MWHL and failed to pay them any wages. Plaintiffs further allege that Norma Jean's

---

[1] Plaintiffs originally claimed damages from October 8, 2017. *See* ECF 66, at 6, 7, 8, 9, 10. After the damages hearing, and with the permission of the Court, Plaintiffs amended the start date of the look-back period to October 22, 2017, three years before the date the complaint was filed. ECF 68, at 1. I note, however, that though the case was opened on October 22, 2020, the docket indicates that the complaint filed on that date was "filed in error." ECF 1. The complaint was then refiled on October 23, 2020. ECF 2. Thus, the appropriate start date for the relevant time period is October 23, 2017. The Court takes judicial notice of the fact that October 22, 2017, was a Sunday, and October 23 a Monday. In practice, whether the look-back period starts on the 22nd or 23rd of October makes little, if any, difference. Plaintiffs have estimated their damages on a weekly basis, and Plaintiffs have estimated, at most, 5.5 shifts per week—not 7. Thus, the relevant time period began the fourth week of October either way. *See Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 485–86 (D. Md. 1982) (noting that damages amounts in such cases are not exact, but are based on approximations).

classified Plaintiffs Leach and Jackson as employees but failed to properly track the hours they worked and, consequently, failed to pay them minimum wage. Plaintiffs were required to pay to work at Norma Jean's by paying "house fees," "dance fees," and sharing tips. ECF 66-1 ¶¶ 4–6; ECF 66-2 ¶¶ 5–7; ECF 66-3 ¶¶ 4–6; ECF 66-4 ¶¶ 4–6; ECF 66-5 ¶¶ 4–6.

On October 11, 2022, Judge Rubin entered default judgment against Defendants and struck Defendants' responsive pleadings. ECF 57. Judge Rubin then referred this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302 for the sole purpose making recommendations concerning damages.[2] ECF 59. On December 19, 2022, this case was reassigned to me.

On January 26, 2023, and following informal email communication with counsel, I scheduled a hearing on damages to occur on Thursday, February 23, 2023, and issued a Letter Order setting a briefing schedule. ECF 64. Specifically, I asked each party to submit a summary of evidence including: (1) a brief statement of the facts that the party proposes to prove in support of their claims; (2) the details of the damages claimed; (3) a listing of each document or other exhibit; (4) a list of witnesses that each party plans to call, including the specialty of any expert witnesses; and (5) any other matters that either party would like to bring to the Court's attention. *Id.* at 1. I also asked each party to "provide the email addresses of all participants to my chambers" and to direct any questions regarding the damages hearing to me, not Judge Rubin. *Id.* These submissions were due no later than Friday, February 17, 2023. *Id.*

On February 17, 2023, Plaintiffs timely filed a pre-hearing brief in support of damages, a list of witnesses, and affidavits of each of the five plaintiffs and provided my chambers (and opposing counsel) with the email addresses of those individuals who would attend the virtual hearing. ECF 66. Defendants did not submit any pre-hearing filings, failed to seek leave to respond to the materials submitted by Plaintiffs, and did not contact my chambers to notify me of any witnesses or other participants who might testify at or attend the hearing.

The night before the hearing, at approximately 10:00pm, defense counsel emailed my chambers requesting a continuance the hearing because PP&G's corporate representatives had a conflict on February 23, 2023. Plaintiffs' counsel responded, also by email, to oppose the request, noting that testimony from Defendants' corporate representatives was unnecessary at the damages hearing, that Defendants could appoint another person to serve as corporate representative if necessary, and that all five Plaintiffs had arranged their schedules to appear at the hearing.

The hearing convened as scheduled and I denied Defendants' request for a continuance after giving all parties an opportunity to argue their position. I noted that it was clear from the

---

[2] The form referral order reflects that the case was referred to a United States Magistrate Judge for the purpose of "reviewing a default judgment and/or making recommendations concerning damages." ECF 59. Judge Rubin's order entering default judgment in favor of Plaintiffs against PP&G as a sanction, however, makes clear that the case was "referred to a United States Magistrate Judge" solely "for a hearing on damages," not to review a default judgment. ECF 57.

record in the case, and defense counsel's last minute email request, that Defendants and defense counsel had advance notice of the hearing. Defense counsel did not represent that any Defendant or corporate representative would be testifying and failed to offer any meaningful argument that their presence would assist counsel in addressing the issue of damages. Additionally, I noted that Defendants had already failed to appear at a hearing where their presence was specifically ordered by Judge Rubin. *See* ECF 63. Accordingly, I denied the request and the hearing proceeded.

At the hearing, all five named Plaintiffs testified on the question of damages. Each re-affirmed the truth and accuracy of their previously filed declarations. *See* ECF 66-1 through ECF 66-5. Their testimony essentially mapped the same ground covered in their declarations, with additional testimony related to alleged consequential damages caused by Defendants' alleged failures to properly compensate them. Each Plaintiff identified multiple categories of damages to which they believed they were entitled: (1) wages owed for hours worked at Norma Jean's as employees; (2) so-called "house fees"[3] improperly charged to them before they were permitted to work at Norma Jean's; (3) so-called "tip-ins"[4] where Plaintiffs were forced to share tips they received with other employees of Norma Jean's who do not customarily receive tips including club security, the DJ, and the "House Mom," an attendant who was permanently stationed in the dancer's locker room and was tasked with providing dancers with hygiene products;[5] and (4) fees owed to the club for each private or semi-private dance performed by Plaintiffs.[6] Each Plaintiff conceded that they collected tips from customers, often in amounts exceeding $1,000 a night. However, Plaintiffs also testified that due to the fees and costs noted above, coupled with

---

[3] A sister court in South Carolina described "house fees" as a cost "entertainers are often required to pay . . . to the club in order to be able to dance there." *Degidio v. Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *1 (D.S.C. Sept. 30, 2015). "House fees are an important source of revenue for the Club and are structured to encourage entertainers to arrive early in the evening to ensure that there are plenty of women dancing in the Club," with the fees increasing the later in the night a dancer arrives. *Id.* All Plaintiffs described the "house fee" system at Norma Jean's as similar to the fee structure detailed in *Degidio*.

[4] Some of Plaintiffs' filings refer to "tip outs" as opposed to "tip ins." *See, e.g.*, ECF 68, at 2. The difference depends on when the tip was collected and does not affect the outcome. Because Plaintiffs testified that Norma Jean's operated a "tip in" system where Norma Jean's collected tips *before* Plaintiffs' shifts started (as opposed to "tip outs" collected after a shift), I will use "tip in."

[5] A "House Mom" has been described as "an employee who collects entertainers' house fees, provides dancers with toiletries, and administers breathalyzer tests." *Hurst v. Youngelson*, No. 1:15-CV-03560, 2019 WL 12521475, at *4 (N.D. Ga. Dec. 26, 2019).

[6] The Second Amended Complaint described these costs as a reduction in Plaintiffs' "earnings from performing dances . . . based upon Defendants' unilaterally determined division of earnings from tips received from customers for each performance of private and semi-private dances." ECF 29, at 15 ¶ 80. "For example, if a customer wanted a lap dance from [any] Plaintiff, it cost $25" and the "Defendants would get $5 . . . ." *Id.* All Plaintiffs testified to this practice during the hearing.

*Butler et al. v. PP&G, Inc., et al.*
Civil No.: 20-cv-3084-JRR
May 22, 2023 Report & Recommendation on Damages
Page 4

Defendants' failure to pay them as employees, there were nights where they would lose money while working in the club because the tips each received did not exceed the fees and costs required to dance at Norma Jean's. Each Plaintiff was subject to full cross examination by Defendants' counsel. Defendants presented no witnesses. At the conclusion of the hearing, each party argued their respective positions regarding damages.

I asked Plaintiff to re-calculate the damages request based on issues raised during the hearing.[7] On Monday, February 27, 2023, Plaintiffs submitted a Supplemental Brief including revised damages calculations. *See* ECF 68. These calculations are:

| Plaintiff | Wages Owed | House Fees | Tip-outs | Dance Fees | Total Owed |
|---|---|---|---|---|---|
| Butler | $38,193.92 | $34,718.75 | $36,107.50 | $19,442.50 | $128,462.68 |
| Leach | $33,328.46 | $24,525.00 | $24,525.00 | $17,167.50 | $99,545.96 |
| Jackson | $39,565.84 | $40,400.00 | $30,300.00 | $8,837.50 | $119,103.34 |
| Ray | $51,139.24 | $56,362.50 | $48,847.50 | $26,302.50 | $182,651.74 |
| Niang | $12,443.40 | $9,990.00 | $9,990.00 | $4,995.00 | $37,418.40 |

*Id.* at 2.[8] Plaintiffs also reiterated the request that the Court "treble" the damages as permitted by the MWPCL, Md. Code Ann., Lab & Empl. § 3-507.2(b). *Id.* at 2. At minimum, Plaintiffs aver that the damages should be liquidated under the MWHL, Md. Code Ann., Lab & Empl. § 3-427(d)(1)(ii). *Id.* at 3. Defendants did not respond to Plaintiffs' supplemental filing, nor did they request leave to do so.

**II.     Applicable Law**

Though Plaintiffs have brought this suit pursuant to the FLSA, MWPCL, and MWHL, Plaintiffs may only seek recovery under one theory of liability. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980). Plaintiffs have elected to seek treble damages under the MWPCL, Md. Code Ann., Lab & Empl. § 3-507.2(b), or alternatively, "all compensatory damages owed and an

---

[7] Plaintiffs' supplemental filing corrected three errors. *See* ECF 68, at 1–2. The original request sought damages back to October 8, 2017. ECF 66, at 6, 7, 8, 9, 10. However, the MWPCL and MWHL have a three-year statute of limitations that would limit recovery to October 23, 2017, three years prior to the filing of Plaintiffs' complaint. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Plaintiffs corrected these calculations to reflect the proper date. *See supra*, note 1. Plaintiffs also removed calculations for lost wages they alleged were owed to Plaintiff Ray for work performed from March 16, 2020, through January 22, 2021, when Norma Jean's was closed due to Baltimore City Executive Orders restricting business operations because of the COVID-19 pandemic. Finally, Plaintiffs addressed a typographical error in Plaintiff Jackson's dance fee calculations.

[8] I note that there appears to be a minor typographical error in the total owed to Plaintiff Butler. The amounts in the "Wages Owed," "House Fees," "Tip-outs," and "Dance Fees" columns add up to $128.462.67, not $128.462.68.

equal amount in liquidated damages pursuant to Md. Code Ann., Lab & Empl. § 3-427(d)(1)(ii)." ECF 66, at 5. Plaintiffs also request reasonable attorney's fees and costs under either statutory remedy.[9] *Id.*

"[T]he MWHL and the MWPCL are wage enforcement laws, with the MWHL aiming 'to protect Maryland workers by providing a minimum wage standard[,]' and the MWPCL requiring 'an employer to pay its employees regularly while employed, and in full at the termination of employment.'" *Amaya v. DGS Constr., LLC*, 278 A.3d 1216, 1239 (Md. 2022) (quoting *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 624–25 (Md. 2014)). "The MWHL parallels the FLSA and sets a minimum wage for Maryland." *Chavez v. Besie's Corp.*, Civ. No. GJH-14-1338, 2014 WL 5298032, at *2 (D. Md. Oct. 10, 2014) (citing Md. Code Ann., Lab. & Empl. § 3-413). "The MWPCL," by contrast, "requires an employer to pay an 'employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.'" *Vanegas v. Diaz Granados, Inc.*, Civ. No. PWG-15-2298, 2017 WL 345855, at *3 (D. Md. Jan. 24, 2017) (quoting Md. Code Ann., Lab. & Empl. § 3-505(a)). Additionally, "under the MWPCL, '[a]n employer may not make a deduction from the wage of an employee' [except] under certain conditions." *Chavez*, 2014 WL 5298032, at *2 (quoting Md. Code Ann., Lab. & Empl. § 3-503).

In *Anderson v. Mt. Clemens Pottery Co.*, the United States Supreme Court outlined the applicable standard of proof regarding damages owed to Plaintiffs for unpaid wages. 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds as stated in Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 799 (D. Md. 2010); *see also Gaither v. Davi Transp. Servs., LLC*, Civ. No. ELH-18-1447, 2020 WL 2614783, at *4 (D. Md. May 22, 2020) (noting that the same standard applies under both the FLSA and the MWHL because such claims "can be analyzed together").

Under *Anderson*, "the employee has the initial burden of proving that she 'performed work for which [she] was improperly compensated and [ ] produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *McFeeley v. Jackson St. Ent., LLC*, Civ. No. DKC 12-1019, 2015 WL 2100920, at *3 (D. Md. May 5, 2015) (alterations in original) (quoting *Anderson*, 328 U.S. at 687) (*McFeeley I*), *aff'd*, 825 F.3d 235 (4th Cir. 2016) (*McFeeley II*). Employees can meet this burden through credible testimony. *See Donovan v. Kentwood Dev. Co.*, 549 F. Supp. 480, 485 (D. Md. 1982); *Gaither*, 2020 WL 2614783, at *7.

Once a plaintiff employee establishes a prima facie case, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88. If the employer does not rebut the prima facie case, the Court can then award damages to the employee, even though the amount is only approximate. *Id.* "Where plaintiff has demonstrated that some work was performed for which the employee was

---

[9] Plaintiffs propose submitting "a subsequent petition for recovery of their final attorneys' fees and costs pursuant to the MWHL and/or MWPCL" after the Court rules on damages. ECF 66, at 12.

improperly compensated, there is a right to recovery, even though the amount may be uncertain and damages difficult to calculate." *Donovan*, 549 F. Supp. at 485–86 (citing *Hodgson v. Ricky Fashions, Inc.*, 434 F.2d 1261, 1263–64 (5th Cir. 1970); *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721 725–26 (5th Cir. 1961)).

It is hornbook law that "[i]n order to calculate damages, 'the Court . . . may rely on affidavits or other evidentiary documents in the record to determine the amount of damages.'" *Paige v. CD#15CL2001, Inc.*, Civ. No. PWG-15-3691, 2017 WL 193499, at *5 (D. Md. Jan. 18, 2017) (citing *Quiroz v. Wilhelm Commercial Builders, Inc.*, Civ. No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011)). "The Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Id.* (citing *Lopez v. Lawns R Us*, Civ. No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008), *report and recommendation adopted*, Civ. No. DKC-07-2979, 2008 WL 11509751 (D. Md. June 26, 2008)).

### III.   Analysis

Plaintiffs allege they are each owed compensatory damages for unpaid base minimum wages, as well as reimbursements for "tip-in fees," "house fees," and "dance fees" paid to Norma Jean's. Three Plaintiffs (Ray, Niang, and Butler) were not paid wages at all as they were misclassified as independent contractors. Two Plaintiffs (Leach and Jackson), who were classified as employees, were undercompensated.

Here, each Plaintiff has estimated the number of hours worked during the relevant three-year time period, which began on October 23, 2017, through credible testimony and declarations, which each Plaintiff reaffirmed under oath. *See* ECFs 66-1, 66-2, 66-3, 66-4, 66-5, 68; *supra* note 1. Specifically, Plaintiff Butler avers that she worked at Norma Jean's from the fourth week in October 2017 through November 2019, approximately 101 weeks. ECF 68-1, at 1–4. Butler avers that she worked an average of 5.5 days a week and for an estimated 7 hours a day. *Id.* Plaintiff Leach avers that she worked at Norma Jean's from the fourth week of October 2017 through January 2020, approximately 109 weeks. ECF 68-2, at 1–4. Leach alleges that she worked an average of 4.5 days a week for an estimated 7 hours a day. *Id.* Plaintiff Jackson alleges that she worked at Norma Jean's from the fourth week in October 2017 through the last week of December 2019, approximately 105 weeks. ECF 68-3, at 1–4. Jackson avers that she worked an average of 8 hours a day, 5 days a week. *Id.* Plaintiff Ray avers that she worked at Norma Jean's from the fourth week of October 2017 through the club's closure the third week of March in 2020. ECF 68-4, at 1–7. She alleges that she began working at the club again the first week of February in 2021. *Id.* at 6. All totaled, Plaintiff Jackson alleges that she worked at Norma Jean's for 167 relevant weeks. *Id.* at 1–7. Ray estimates that she worked an average of 4.5 days a week for 6.5 hours a day. *Id.* Plaintiff Niang alleges that she worked at Norma Jean's from the fourth week of October 2017 through the last week of July in 2018. ECF 68-5, at 1–2. Niang estimates that she worked 4.5 days a week for an estimated 8 hours a day. *Id.*

### A. **MWHL and FLSA**

As to the unpaid minimum wages owed to each Plaintiff, there is no dispute as to the rate of minimum wage owed during the relevant time periods. *See* Md. Code Ann., Lab & Empl. § 3-413(c)(2); ECFs 68-1, 68-2, 68-3, 68-4, 68-5 (incorporating the relevant minimum wages under § 3-413(c)(2) for the relevant time periods). Critically, Defendants have not challenged Plaintiffs' estimates of the amount of time they worked. And though Plaintiffs Leach and Jackson have offered earnings records, these records do not conflict with the time periods of each Plaintiffs' alleged employment. ECF 66-2, at 10–22 (noting that Plaintiff Leach was "hired" by Norma Jean's in February of 2014 and paid (some) wages between January of 2013 and February of 2020); ECF 66-3, at 10–12 (noting that Plaintiff Jackson was "hired" in January of 2017 and paid some wages between January 2017 and December of 2018).

As such, I recommend a finding that Plaintiffs have met their initial burden under *Anderson* of producing sufficient evidence to show the amount and extent of their work at Norma Jean's. *See McFeeley I*, 2015 WL 2100920, at *3. Plaintiffs have also established through their unimpeached testimony that they were forced to pay "tip-in fees," "house fees," and "dance fees," a portion of proceeds earned from providing private dances. Defendants have also failed to rebut Plaintiffs' showing by either demonstrating a precise amount of work performed or producing evidence to negate a reasonable inference of the amount and extent of Plaintiffs' work.

In calculating the amount of unpaid minimum wages owed, I begin by addressing whether tips received by the Plaintiffs should affect their wage calculation. Under the MWHL, an employer may directly pay tipped employees $3.63 per hour—less than the minimum wage for non-tipped employees. Md. Code Ann., Lab & Empl. § 3-419(c). To take advantage of this "tip credit," the employee must (1) be "in an occupation in which the employee customarily and regularly receives more than $30 each month in tips"; (2) have "been informed by the employer about the provisions of this section"; and (3) have "kept all of the tips [except those contributed to a lawful tip pool] that the employee received." *Id.* at § 3-419(a). Notice of the tip credit is an affirmative responsibility of the employer under both the FLSA and MWHL. *Prusin v. Canton's Pearls, LLC*, Civ. No. JKB-16-0605, 2017 WL 5126156, at *4 (D. Md. Nov. 6, 2017). An employee's awareness of a tipping scheme is not sufficient notice to the employee. *Id.* Here, critically, defense counsel acknowledged at the hearing that he could not establish that Plaintiffs had been informed of the provisions in Md. Code Ann., Lab. & Empl. § 3-419(c), and further conceded that for this reason alone, Norma Jean's could not take advantage of the tip credit.

Employees who receive tips, but whose wages were unlawfully withheld and who did not receive tip credit notice, are entitled to recover unpaid minimum wage at the rates described in the MWHL, Md. Code Ann., Lab. & Empl. § 3-413(c)(1), regardless of whether they actually received and kept tips earned. *See Vanegas*, 2017 WL 345855, at *3–5. Under the FLSA and MHWL, employers cannot "us[e] tips or fees to offset the minimum wage they were required to pay plaintiffs." *McFeeley II*, 825 F.3d at 245–46; *Degidio v. Crazy Horse Saloon & Rest., Inc*, No. 4:13-CV-02136-BHH, 2015 WL 5834280, at *16 (D.S.C. Sept. 30, 2015) ("To the extent that the defendant is arguing that the plaintiff was not undercompensated because she made more than

minimum wage through tips, the argument must be rejected."). Thus, all Plaintiffs, even those classified as employees, are entitled to the full amount of unpaid minimum wage under the MWHL because they did not receive proper notice of any tip credit. The fact that Plaintiffs testified to receiving and keeping tips while working at Norma Jean's is irrelevant to the calculation of minimum wages owed.

As such, the Plaintiffs are each owed the following base unpaid minimum wages: (1) $38,193.92 to Plaintiff Butler; (2) $33,328.46 to Plaintiff Leach; (3) $39,565.84 to Plaintiff Jackson; (4) $51,139.24 to Plaintiff Ray; and (5) $12,443.40 to Plaintiff Niang.

In addition to unpaid minimum wages, Plaintiffs' wages under the MWHL also include amounts paid to Norma Jean's for each of the three fee categories. The FLSA and, consequently, the MWHL include a long-standing requirement that "[a]n employee's wages must be 'free and clear,' and an employer violates the FLSA where kickbacks 'directly or indirectly to the employer or to another person for the employer's benefit' reduce the employee's compensation below the minimum wage." *Moodie v. Kiawah Island Inn Co.*, LLC, 124 F. Supp. 3d 711, 717 (D.S.C. 2015) (citing 29 C.F.R. § 531.35); *Gaither*, 2020 WL 2614783, at *4. I address each fee category below.

As to whether the wage calculation includes reimbursement for the amount of money each Plaintiff was forced to "tip in" to fellow employees, the question appears generally settled that it does. This Court has held that compensatory damages calculations under the MWHL appropriately include amounts paid to employers, including "tip-in fees." *See McFeeley I,* 2015 WL 2100920, at *1 (upholding jury instructions estimating an exotic dancer plaintiff's damages under the FLSA and MWHL based on "the number of weeks [the employee] worked during the applicable time frame, the schedule she kept, the number of hours she worked each week, *and the weekly amount she had to pay to Defendants*" (emphasis added)); *Paige*, 2017 WL 193499, at *5.

Each Plaintiff provided credible estimates as to the amounts paid to "tip in." *See Langley v. RPM Dining, LLC*, No. 1:20-CV-890-RP, 2022 WL 17744492, at *4 (W.D. Tex. Dec. 16, 2022) (permitting estimates for amount paid as "tip outs" when defendant failed to keep adequate records of such payments). Each Plaintiff stated in their respective declaration (and re-affirmed during hearing testimony) that they shared an average of $50 to $65 of their tips per workday with the "disc jockey, valet, security, and 'house mom.'" ECF 66-1 ¶ 5 (Butler, estimating she paid an average of $65 per workday in shared tips); ECF 66-2 ¶ 6 (Leach, estimating she paid an average of $50 per workday in shared tips); ECF 66-3 ¶ 5 (Jackson, estimating she paid an average of $60 per workday in shared tips); ECF 66-4 ¶ 5 (Ray, estimating she paid an average of $65 per workday in shared tips); ECF 66-5 ¶ 5 (Niang, estimating she paid an average of $60 per workday in shared tips). Plaintiffs explained that the "tip in" amount paid each workday generally differed based upon the employees' estimated tips for the evening. For example, Plaintiff Butler noted that if the DJ believed a dancer was receiving a large amount of tips, the DJ required a higher "tip-in fee" from the dancer.

Noting again that Defendants offer no opposition, I will adopt Plaintiffs' estimates and recommend a finding that Plaintiffs paid out the following amounts as "tip ins" during the relevant

time period for which they are owed reimbursement: (1) $36,107.50 to Plaintiff Butler; (2) $24,525 to Plaintiff Leach; (3) $30,300 to Plaintiff Jackson; (4) $48,847.50 to Plaintiff Ray; and (5) $9,990 to Plaintiff Niang.

As to the "house fees," all Plaintiffs credibly testified that they were required to pay Norma Jean's simply to dance. This fee was assessed on a sliding scale, with the amount rising as the night wore on. A dancer arriving earlier in the night would pay a lower fee than one arriving later in the evening. Numerous courts have agreed that these fees are recoverable in an FLSA action, and the same logic would apply to an MWHL action. *See Hurst v. Youngelson*, No. 1:15-CV-03560, 2019 WL 12521475, at *5 (N.D. Ga. Dec. 26, 2019); *Rosado-Cruz v. Lexington Golf & Travel, LLC*, Civ. No. 5:21-267-DCR, 2022 WL 17156907, at *1 (E.D. Ky. Nov. 22, 2022) (including "house fees" in proposed calculations for the settlement of an FLSA case); *Pichardo v. Fifty Five Long Island Corp.*, No. 20CV2652CBARML, 2021 WL 4173654, at *5 (E.D.N.Y. Aug. 2, 2021) (citing *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 954 (S.D.N.Y. 2013)) (agreeing that the deduction of a nightly "house fee" was recoverable under New York and federal law), *report and recommendation adopted sub nom. Prichardo v. Fifty Five Long Island Corp.*, No. 20CV2652CBARML, 2021 WL 4173067 (E.D.N.Y. Sept. 14, 2021); *Gaither*, 2020 WL 2614783, at *4. Under the facts detailed in Plaintiffs' declarations and testified to at the damages hearing, I agree that "house fees" assessed to Plaintiffs by Norma Jean's are recoverable in this action as part of Plaintiffs' wages.[10]

Since Norma Jean's did not keep records of the fees assessed, Plaintiff were, as with "tip in" costs, forced to estimate the amounts paid to Norma Jean's. I find Plaintiffs' estimates to be credible and accurate when compared to the days each Plaintiff worked. As such, I recommend a finding that Plaintiffs paid the following amounts in "house fees" and are therefore owed reimbursement: (1) $34,718.75 to Plaintiff Butler; (2) $24,525.00 to Plaintiff Leach; (3) $40,400.00 to Plaintiff Jackson; (4) $56,362.50 to Plaintiff Ray; and (5) $9,990.00 to Plaintiff Niang.

The same is true for the "dance fees," portions of Plaintiffs' earnings from private dances each Plaintiff testified they paid to Norma Jean's. Courts have found that dance fees paid by patrons to the dancers were equivalent to tips. *See Shaw v. Set Enterprises, Inc.*, 241 F. Supp. 3d 1318, 1328–29 (S.D. Fla. 2017) (citing *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D. Tex. 1995); *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015); *Hart*, 967 F. Supp. 2d at 933; *Thornton v. Crazy Horse, Inc.*, No. 3:06-CV-00251-TMB, 2012 WL 2175753, at *10 (D. Alaska June 14, 2012)) ("[M]ost courts have concluded that performance

---

[10] There is no argument raised by Defendants that "house fees" constituted a "service fee" of the kind that is returned to the employee and may offset Defendants' minimum-wage liability. *See Prusin*, 2017 WL 5126156, at *6 (citing 29 C.F.R. § 531.55(b)). Regardless, the record here does not establish that such an offset would apply since there is no evidence that the house fees were included in Norma Jean's gross receipts or that house fees were distributed by Norma Jean's to its employees. *See McFeeley II*, 825 F.3d at 246 (citations omitted).

fees collected by exotic dancers should be treated as tips."). Thus, the analysis here is the same as the tip analysis above. The money Plaintiffs retained from performing private dances cannot be used to offset the amount of wages owed, and Plaintiffs are entitled to reimbursement of the portion of these earnings collected by Norma Jean's. *See McFeeley I,* 2015 WL 2100920, at *1; *Paige*, 2017 WL 193499, at *5.[11] As such, I recommend finding that Plaintiffs paid the following amounts to Defendants in "dance fees" and are therefore owed reimbursement: (1) $19,442.50 to Plaintiff Butler; (2) $17,167.50 to Plaintiff Leach; (3) $8,837.50 to Plaintiff Jackson; (4) $26,302.50 to Plaintiff Ray; and (5) $4,995.00 to Plaintiff Niang.

### B. MWPCL

In addition to recovery under the MWHL and FLSA, Plaintiffs are also entitled to recover the above amounts under the MWPCL. *See Paige*, 2017 WL 193499, at *5 (including in the plaintiff's wage calculation for purposes of the FLSA, MWHL, and MWPCL). *But see Unique Butler v. PP&G, Inc.*, Civ. No. WMN-13-430, 2013 WL 5964476, at *8 (D. Md. Nov. 7, 2013) (denying summary judgment on an exotic dancer plaintiff's MWPCL claim because the Court could not conclude as a matter of law based on the evidence before it that the fees paid by the plaintiff to the club were impermissible *wage* deductions rather than pay or tip deductions). When each Plaintiff stopped working at Norma Jean's, she had not been paid any wages by Defendant. Defendant has not argued that withholding the wages was the result of any bona fide dispute. Thus, I recommend finding that Plaintiffs are entitled to recovery under the MWPCL.

### IV.   Enhanced Damages

Plaintiffs have elected to recover under Maryland law, rather than the FLSA, because of the three-year statute of limitations. ECF 66, at 4–5; *see also* Md. Code Ann. Cts. & Jud. Proc. § 5-101; *Guerra v. Teixeira*, Civ. No. TDC-16-0618, 2019 WL 330871, at *13 (D. Md. Jan. 25, 2019). Specifically, Plaintiffs have requested relief under the MWPCL, or, alternatively, under the MWHL. Both statutes permit enhanced damages. "Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012), *report and recommendation adopted*, Civ. No. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013).

Under the MWHL, Plaintiffs may recover liquidated damages, amounting to double damages. *Prusin*, 2017 WL 5126156, at *15. The MWPCL allows recovery of "an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs [treble damages]" when "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." Md. Code Ann., Lab & Empl. § 3-507.2(b). "The

---

[11] Just as with the "house fees," Defendants have not argued or proffered evidence that the "dance fees" were lawful "service fees." Nor is there evidence that Defendants kept track of these fees, as required to take advantage of the FLSA's service charge offset. *McFeeley II*, 825 F.3d at 246.

assessment whether a bona fide dispute exists centers on whether the party resisting the claim 'has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing.'" *Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 725 (D. Md. 2020) (quoting *Admiral Mortg. v. Cooper*, 745 A.2d 1026, 1031 (Md. 2000)), *aff'd*, 860 F. App'x 264 (4th Cir. 2021).

"The Fourth Circuit has held that a grant of liquidated damages is the 'norm' in cases in which the FLSA is violated." *Williams v. Md. Office Relocators*, 485 F. Supp. 2d 616, 620 (D. Md. 2007) (citing *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997)). Indeed, "it has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL, when the 'defendants [do] not offer any evidence of a bona fide dispute to make liquidated damages inappropriate, [but the] plaintiffs [do] not offer any evidence of consequential damages suffered because of the underpayments.'" *Fiallos v. Hamzah Slaughter House, LLC*, No. 1:20-CV-03577-JMC, 2022 WL 16540001, at *7 (D. Md. Oct. 28, 2022) (quoting *Clancy*, 2012 WL 5409733, at *8) (internal quotation marks omitted). "Although liquidated damages can be reduced or eliminated if an employer demonstrates a good faith attempt to comply with the FLSA, the employer[']s burden 'is a difficult one to meet . . . and '[d]ouble damages are the norm, single damages the exception.'" *Jahn v. Tiffin Holdings, Inc.*, Civ. No. SAG-18-1782, 2020 WL 1285507, at *5 (D. Md. Mar. 18, 2020) (citing *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 638 (D. Md. 2005)).

Here, Defendants have not asserted that they withheld Plaintiffs' wages as a result of any bona fide dispute. Defendants do argue, however, that Plaintiffs suffered no consequential losses because each Plaintiff received copious tips—sometimes over $1,000 a day—which Defendants allege was more than enough to meet Plaintiffs' needs. This argument misses the mark. The inquiry must center around whether Plaintiffs suffered consequential damages because they were deprived of the wages they were rightfully owed. Plaintiffs could have experienced hardships despite earning significant tip money, and these hardships may have been avoided had Plaintiffs received the wages they were each owed. Defendants cannot evade consequential damages simply because Plaintiffs may have had profitable tip days.

However, even with a properly focused inquiry, Plaintiffs have failed to meet their burden to establish that Norma Jean's failure to pay wages resulted in consequential losses. Plaintiffs argue that they suffered "consequential damages in the form of house fees, tip-outs, and dance fees." ECF 66, at 5. But, as explained above, these fee amounts are more properly included as part of the compensatory damages calculation. While four of the five Plaintiffs testified that they suffered some financial setbacks "because they worked at Norma Jean's," the record is silent as to how the additional compensation owed would have prevented these outcomes. For example, one Plaintiff noted in her testimony that she suffered an eviction, but did not articulate the basis for the eviction or when it occurred. Even assuming it was for failure to pay rent, she failed to establish that the hourly pay she should have received from Norma Jean's would have covered the shortfall. I agree that there will always be some "guesswork" inherent in a calculation of consequential damages. However, Plaintiffs' testimony and filings fail to directly connect the alleged financial setbacks to the underpayment of the wages at issue here. I therefore decline to recommend finding

*Butler et al. v. PP&G, Inc., et al.*
Civil No.: 20-cv-3084-JRR
May 22, 2023 Report & Recommendation on Damages
Page 12

consequential losses and will not assess treble damages on that basis.

As noted, Defendants do not assert a good faith defense to Plaintiffs' claim that damages should be, at minimum, liquidated. "The Court assumes then that Defendants concede that Plaintiff[s are] entitled to liquidated damages for [their] minimum wage claims." *Prusin*, 2017 WL 5126156, at *13 n.17 (citing *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1246–47 (D. Md. 1997)). Even if Defendants offered a such a defense, their claim would fail on the merits as there is no evidence before the Court that Defendants acted in "good faith" when they did not pay Plaintiffs the required minimum wage. Accordingly, I recommend assessing liquidated damages under Maryland law.

For these reasons, and in the absence of any good faith challenge to Plaintiffs' estimated hours worked or amounts paid in fees and tip-ins, I recommend that the Court award Plaintiffs a total of $1,134,364.22. This total breaks down to the following amounts per Plaintiff: (1) $256,925.34 to Plaintiff Butler ($128,462.67 in wages owed plus liquidated damages); (2) $199,091.92 to Plaintiff Leach ($99,545.96 in wages owed plus liquidated damages); (3) $238,206.68 to Plaintiff Jackson ($119,103.34 in wages owed plus liquidated damages); (4) $365,303.48 to Plaintiff Ray ($182,651.74 in wages owed plus liquidated damages); and (5) $74,836.80 to Plaintiff Niang ($37,418.40 in wages owed plus liquidated damages).

## V.   Notice to Parties

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b.

Despite the informal nature of this letter, it is a Report and Recommendation of the Court and shall be docketed as such.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge